Ruffin, Chief Justice.
 

 — It is yielded in the case stated in the record, that the whole of the money paid to the sheriff, was the money of Dobson, the debtor in the execution, and that the supposed purchase therewith by the daughter Nancy Young, and the deed taken by her, was upon a dishonest contrivance between those persons, to defeat, thereby, the father’s other creditors. Yet, these facts and intents to the contrary, notwithstanding, his Honor declared his opinion to be, that the sale and deed did not only apparently, but really, divest the estate in law, out of Joseph Dobson, and vest it in his daughter, as against the lessors of the plaintiff, and the creditors whom they represent. Under that opinion, the plaintiff was non-suited, and appealed.
 

 This Court cannot adopt the opinion of his Honor; but deems it erroneous. It seems to have been founded on the circumstances of the judgment and execution being for a just debt, and the good faith', on which the creditor and the sheriff acted. The sheriff is' treated as the owner of the land sold, or, at least, as the authorised vendor, making a Sale, deemed by him to be a true sale at the time; and it is thence inferred, that the sale must be valid, and his deed effectual.
 

 The Court does not view the subject in that light. We think the sale and conveyance to Nancy Young fraudulent and void within the act of 1715. In terms that statute includes suits, judgments and executions as well as feoffments, gifts, grants, and other alienations and conveyances. The spirit and true construction of it extends to every possible art and device, by which a debtor aims to pass the title of his property from himself to another, to the intent to defeat or hinder his creditor. The intervention of the process of the law at the instance of a creditor, who is innocent of the guilty scheme, and ignorant that he is made subservient to its execution, cannot protect the intents on which the other parties acted, from investigation; nor confirm those parts of the transac
 
 *573
 
 tion by which those parties would reserve or acquire valuablefinterests. The creditor stands on his good faith. But the others cannot involve his innocence to purge their bad faith, or to conceal it. The creditor was entitled to his own debt. He received the money and may retain it. The payment was right and is valid. But “ every act as well judicial as others, which, of themselves are just and lawful, being mixed with fraud and deceit, are, in judgment of law, wrongful and unlawful.”
 
 Fermor’s case,
 
 3 Rep. 77; and
 
 “
 
 a fraudulent estate,” [gained by one thus mixing fraud with what would be otherwise right] “ is no estate in the judgment of law. In the case before us, what did the law and justice demand ? That the debtor should pay the debt; and, if he could not, or would not, that the sheriff should make it of his estate by sale. In fact the debt was paid. By whom? ' By the debtor, through the hands of his daughter, with the debtor’s own money. That is the reality of the case; and thus far being fair and proper, it stands. When the debtor and his daughter endeavour to give to that reality the appearance of another thing, namely, that the debt was not paid by the debtor, and with his money, but was paid by the daughter and with her money, advanced as the price of the land exposed to sale, they introduce falsehood and an injurious deception into the title sét up by the daughter, which vitiates it. That part of the apparent transaction is delusive. As the money was the father’s and not the daughter’s, there was in truth no price and no sale, as between the father and daughter. The sale, which the creditor and sheriff thought they were making, was a mere fiction; and the mistake of those persons cannot impart to it actual existence. It assumed, indeed, the form of a legal sale and conveyance by the sheriff. But if the sheriff had known the truth, he would not have been obliged, and could not justly and lawfully have made the deed. He also was imposed on; and, surely, the authors of that deception cannot adduce it as a screen from animadversion by other persons, on whom the artifice, if successful, operates still more injuriously. That a deed obtained from a sheriff by deceit, is not good, and may be
 
 *574
 
 impeached at law, was decided in the case of
 
 Den on demise of M‘Kerall
 
 v.
 
 Cheek,
 
 2 Hawks, 343. But this case need not be put on that point. It rests upon the solid ground that, notwithstanding the form which it took, there was, in fact and in truth, rio sale; and, consequently, the sheriff had no authority to convey. It is a flagrant attempt to disguise, under .the form of a sale by the law, an arrangement of the debtor’s property, made by himself, for his own benefit, or without any consideration, for the benefit of his child, to the disappointment of his creditors. It is a perversion of the process of the law, to a.purpose not intended by the law, but forbidden alike by it and by common honesty; the making a sale under it, to raise money, which the debtor already had, which he had intended to apply, and which he did apply to the satisfaction of that very debt. The law would be false to itself,' if the substance of such a transaction could be secured from scrutiny by the shell of mere form, if it treated as a sale, made by its officer, under its authority, that .which is, under the garb of such a sale, so palpably a voluntary disposition by the debtor himself, upon premeditated and preconcerted' fraud between him and the pretended purchaser.
 

 The correctness of the foregoing general observations seems to us to be incontrovertible. If so, they must, we think, remove the difficulty which was felt in the Superior Court. Whatever may be the effect, as between themselves, or those claiming under them by contract,'of the form imparted by the debtor and his accomplice to the transaction, the law characterises it as “ feigned, covetous and fraudulent,” in respect of creditors, and enacts that it shall be “ utterly void, frustrate, and of no
 
 effect
 
 — the
 
 •pre-tence, colour, and feigned consideration to the contrary notwithstanding.”
 
 This principle being enacted by statute, and the subject of the controversy being whether an instrument, which purports to pass
 
 the
 
 legal estate from the debtor, which was before in him, is valid or void, as being without or within the rule thus created, it seems to us to be essentially and necessarily within the jurisdiction of a court of law, to examine into the' consideration and purposes of the conveyance, and if they should be found to
 
 *575
 
 be those forbidden by the statute, to apply and enforce its enactments. This we had considered as settled law. The position laid down by his Honor, implies, that such a conveyance is necessarily valid at law, notwithstanding the intent stated, because a trust arose between the parties, which could be enforced in equity, and can be enforced there only.
 

 If there be a trust, the change of the jurisdiction must be acknowledged. But that takes for granted the very question in dispute; which is, whether the daughter gained any estate, out of which a trust could arise. That depends on the validity of the deed to her: and that, again, upon the intent and purpose on which she took it — ■ into which it is competent to a court of law to inquire. Taking it for granted, as was done in this case, that the intent was to deceive creditors, and that the money paid was the father’s, yet the sale and deed are binding between the father and daughter, both at law and in equity. The statute is express'to that effect, and they are conclusive at law. It has likewise been long and uniformly held, that equity will not interfere between persons
 
 in' pan delicto,
 
 nor enforce, between the parties, a secret trust arising out of a deed in fraud of creditors.
 
 Vick
 
 v.
 
 Flowers,
 
 1 Murph. 321.
 
 Brady
 
 v.
 
 Ellison,
 
 2 Hay. Rep. 348. The debtor, himself, then, could not claim a reconveyance upon the foot of such a trust. It is not deemed a valid trust, fit to be executed in a Court of equity. For the same reason, one claiming as a creditor of the debtor, could not insist on it, by way of affirming the alleged agreement, and asking the execution of the trust. The Court does not recognise any such trust for the purpose of enforcing it, as such, in favour of any person; because if it existed, it is covinous, and avoids the deed itself. A creditor cannot, therefore, be relieved upon a bill, which supposes the existence and validity of such a trust. If, indeed, there were a trust, which, as such, could be. sustained in equity, it would be decisive of this question; because of a trust, independent of the act of 1812,
 
 {Rev. ch.
 
 830,) the law takes no notice. So, on the other hand, if, as we think clear, there be no such trust, and relief in equity would be founded, not on it,
 
 *576
 
 but on a ground entirely different, namely, the fraudulent intent to withdraw the debtor’s estate from his creditors, ^le conclusion seems to be equally reasonable and certain, that the jurisdiction is, appropriately, at law ; and, if not exclusive, is, at the least, concurrent with that in equity.
 

 It is not doubted that equity may relieve against fraud. It is admitted, that against many frauds, redress can be had there only. In respect to that species now under consideration, against creditors, resort,- before the statute, was necessarily had to equity, to get at property, of which the lagal title was never in the debtor; or suelvas is not tangible,, and in the hands of another person, to the intent to withdraw it from creditors; or in a way that produces that effect. It is likewise a common equity in favour of a judgment creditor, who cannot otherwise obtain satisfaction- by execution,- to file a bill against the debtor and his alienee, alleging a fraud in- the conveyance, and seeking a discovery of it from the defendants, and a declaration of it by the court, and relief by a .decree for bringing the estate to sale, cleared of the cloud on the title. That is a subsidiary jurisdiction, not superseding that of a court of law, but rendering its process more effectual. A purchaser at sheriff’s sale may also in many,- and, perhaps, in all cases, pursue his remedy in equity; and that not only to perpetuate evidence of the fraud, but to have discovery and relief against it. An example may be stated in a purchase under execution against the
 
 cestui que trust,
 
 under the act of 1812, which does not oust the previous jurisdiction, though it treats the keeping the legal estate outstanding in a trustee, as a
 
 quasi
 
 fraud in the owner, and avoids the legal estate of' the trustee. Another exists when the estate of the' debtor was undera previous
 
 bona fide
 
 lease for a term not expired, or was originally a reversion, not yet fallen in, in which the fraud is not susceptible of immé-diate determination in ejectment, because the purchaser has no present right of entry.- It has been questioned, and earnestly debated, whether a bill will lie by a purchaser under execution, of an estate in possession, or in which he got a right of entry, provided the opposing title be fraudulent ; the objection being, that the plaintiff might go to
 
 *577
 
 law. The authorities do not put that point to perfect rest. The better opinion, however, seems to be, that in cases of mere constructive fraud, and where the motives were honest, and the consideration meritorious, though not valuable, the Chancellor will leave the party to his legal remedy, according to the strict law ; but that in all cases of actual fraud, equity will set aside the conveyance, though the plaintiff might maintain ejectment, and recover the possession.
 
 Bennett
 
 v.
 
 Musgrove,
 
 2 Ves. 51. The very terms in which this rule is stated, admit the jurisdiction of á court of law. The relief in equity is different, and may be more beneficial than that given by the law. But the jurisdiction there is not assumed upon the ground, either that the subject is appropriate to the court of equity as a court of peculiar jurisdiction, or because that court proceeds upon an interpretation of the statute, distinct and different from that given at law, placed on it in equity on a principle peculiar to itself, whereby the meaning of the lawgiver is supposed to be more truly discovered and upheld. On the contrary, it is entertained in equity, notwithstanding it exists in a court of law; and thus entertained, because such deceitful practices, dishonest in their concoction, progress and consummation, are so abhorrent to every tribunal of justice, .that every tribunal hath authority, and is bound to relieve against them, according to their respective capacities, and methods of proceeding; and because the relief peculiar to the court of equity, being final and conclusive, is more perfect than at law.
 

 Admitting, then, that the lessors of the plaintiff might have a decree in equity — which we do not undertake to determine; yet it does not follow, that this action may not be maintained. This is not the case of a
 
 bona fide
 
 trust for the debtor, which a creditor is seeking to reach. For the reasons already given there is no trust at all, judicially speaking, it lying altogether in personal, confidence, and being infected with a turpitude, common to both parties, for which equity would repel the application of either. It may be here remarked, in passing, that if there were a trust, such as equity would support, that court could not help the lessors of the plaintiff, more than a
 
 *578
 
 court 0f law could. For, although the judgment creditor might have filed his bill for a sale under a decree, yet he could not sell under a
 
 fieri facias,
 
 as a trust was not the subject of execution before 1812; and, consequently, the lessors of the plaintiff gained nothing by their purchase. The supposed, relief in equity, not arising out of the jurisdiction of trusts, must therefore proceed on the ground of the fraud; that is, on the statute, which is construed alike in both courts. While, then, each court may give a different relief, it is thus seen that .the rights of the parties depend in both -upon the same questions, and that they are essentially questions of law. They depend upon the judgment pronounced by the statute upon the intents of those acts of the parties, under which Mrs. Young sets up title;, if fair and honest, her estate is good, both at law and in equity.: if covinous, it is “ no estate in judgment of law,” nor in equity. ' ,
 

 There is nothing in .this case to prevent the trial of thpse questions at law. There is no subsisting term to stand in the way of the plaintiff’s entry. .The estate of •the debtor is not an interest originally acquired by him as a trust, upon a conveyance from a third person to his daughter as his trustee. But the .estate was at one time in the debtor himself; and the daughter claims under several acts and instruments; all together, however, constituting but one assurance, which purports to pass the estate of the father out of him to her. We cannot conceive a case proper for a court of law, if this be not. The whole controversy is as to the intent on which the father’s estate was parted with; and as to that, the conveyance, no matter what its form, is not conclusive, but it may be proved
 
 aliunde.
 
 As the estate of the father was a. legal one, and,, if there was fraud, that estate still subsists unchanged, there must be a legal jurisdiction. We are not aware of any principle or adjudication in conflict with this course of reasoning.
 

 It has been supposed at the bar, that a distinction arises between a conveyance directly from the father, and one from the sheriff. It is imperceptible to the court. In reality, the conveyance is from the father, indirectly
 
 *579
 
 through the sheriff. It gives to the dealing the semblance • of fairness, but nothing more than the semblance. It does not make it fair, though it increases the difficulty of detecting its unfairness; but when detected, that avoids this, as well as all other instruments, however solemn. There are numerous cases in the books, which clearly evince that no such potent efficacy is allowed to a sheriff’s sale. Of this class,
 
 Kidd
 
 v.
 
 Rawlinson,
 
 2 Bos. & Pul. 59, is,a leading one. The plaintiff purchased goods at the sale of a sheriff under execution, at the suit of another creditor, and left them with the former owner. The defendant afterwards sold them, and the plaintiff brought his action for the produce of the sale, as money had and received. Upon the authority of
 
 Edwards
 
 v.
 
 Harben,
 
 2 Term Rep. 587, it was contended; that the plaintiff’s title was fraudu^ lent and void, because the possession did not accompany the title. The ready answer, if the doctrine now contended for be true, would have been,-that the sheriff’s bill of sale was conclusive as to the legal title, and that it could be impeached in equity only. But that was not the one given. So far from it, the court said, the open sale ’upon execution, and the purchase by the plaintiff, not in satisfaction of a prior debt to himself, but for money paid by him, took the case out of the rule in
 
 Edwards
 
 v.
 
 Harben,
 
 and prevented the possession constituting
 
 per se
 
 a fraud. The case, however, was not for that reason, allowed to rest there. Lord Eldon, who was then Chief Justice, put it further to the jury to say, whether the plaintiff purchased the goods with the intent of defeating any creditor of the former owner, the debtor. Upon a motion in bank for a new trial, that direction was approved by Lord Eldon, on reconsideration, and by the pther' judges. It is obvious that the plaintiff’s right to recover in that case was made to depend, hot upon the fact that he derived title under execution at the instance of another person, and that the creditor and sheriff acted upon upright intentions, but upon the other facts, that he paid his own money, and purchased with good faith on his part, and took the bill of salé to secure himself, and not to defeat a creditor.
 

 There are many other cases of actions against sheriffs
 
 *580
 
 for false returns, because they did not sell property which they had before sold under other executions, of for selling such property a second time; in none of which has the first sale been received as a conclusive bar
 
 per se
 
 at law, but the trials have proceeded on the inquiry in each of them into the good or bad faith of the purchase under execution.
 

 The case of
 
 Guthrie
 
 v.
 
 Wood
 
 was relied on at the bar as an instance,to the contrary; and it was admitted by the counsel that it was the only one, apparently of that tendency, that could be cited. The court cannot understand that case in the sense attributed to it, nor give it the application contended for. It seems to us to establish the principle we have already laid^down. A debtor there made an assignment to a trustee for the payment of debts, which w;as not impeached. At the time there were demands against the assignor by executions and otherwise, which constituted liens on the goods; and under an execution the sheriff put up'the effects for sale, and the trustee, with a part of the trust money, purchased.them, and left them with his assignor for a short time. A creditor, having a junior lien, claimed 'to be satisfied out of the same-goods; and the sole question was, whether he had the right,-upon these facts, by themselves, and without any dishonest intent in the creditor, the sheriff, or the purchaser at the first sale. It was, very properly, as we think, held that he had not. But it was not upon the ground that the purchaser was amenable only in equity, even if he had bought with the debtor’s money. On the contrary, it was because the money was not the debtor’s, and the intent honest and lawful.. If the assignment had been in trust for the donor, or the value of the effects had so greatly exceeded the debts secured as to show that the security of the creditors was colourable, the purchase would doubtless have been held fraudulent.- But in truth the. case was nothing more nor less than that of an assignee in trust, not for the assignor, but for just creditors, buying with a part of the trust fund, on which there was no lien, other parts on which there were a prior and posterior lien. The preferable lien was entitled to the first satisfaction, and a sale
 
 *581
 
 under it passed the property necessarily freed from the other. If the sale was fair and open, it was the business of him who had the junior lien to see that the sale produced enough to satisfy both, or else he must lose the benefit of his own. The trustee, as against him, might buy as any other person. He owed no duty to him, which obliged him to render that lien effective; but he did owe the duty to his
 
 cestue. que trusts,
 
 to prevent, if he could, any sacrifice of the effects, and to extinguish all liens on them, at as little cost as, fairly, he could. He meditated no fraud on the creditor, and did not buy for the debtor’s benefit, nor with his means. He purchased with money legally his own, but equitably that of the creditors, for whom he was ■trustee, and to whose use his purchase enured. The pur-ohase was protected, not because any bad faith that might have entered into it was not examinable at law, but only in equity ; but because there was no bad faith, and therefore the transaction ought to stand both at law and in •equity. The case was decided on its merits, and not on the form of the title or of proceeding.
 

 In the opinion of the Court, the remedy at law is open to the plaintiff; and the case stated constitutes a flagrant fraud which entitles the plaintiff to a verdict. The intent is stated as a fact; as is, also, that the whole price paid by the daughter was in the father’s money. Either of those facts is destructive of her title.
 

 The Court must not be understood as laying it down, that a person cannot advance money by agreement with a defendant in execution to satisfy the.debt, but that the sheriff shall proceed to a sale, and the advance be made as upon a purchase at the sale. We have no doubt of the affirmative. The whole is then done in good faith, and the •conveyance is taken honestly as a security for the money then advanced, with a trust resulting, of course, to the former owner. Nor do we think the case is necessarily different, if a part of the debt be advanced by the debtor’s friend, and the rest by the debtor himself. Such a case depends on the actual intent. If there be no falsehood, but open dealing; and the funds of the debtor being insufficient, a sale is necessary at all events, the lender may
 
 *582
 
 properly purchase, and take a deed to secure his demands. Such was the case of
 
 Hawkins
 
 v.
 
 Sneed,
 
 3 Hawks, 149. But if there be actual fraud; if the purchaser, with the debtor’s money in his hands nearly to the amount of the debt, buys, paying only a small proportion of his own, and, by collusion with the'debtor, takes a deed with the intent to claim the estate absolutely against other creditors, his own advance could be made but to give colour to the transaction, and could not rescue it from the legal consequences of the corrupt combination supposed. The judgment must be reversed and a new trial ordered.
 

 Per Curiam. Judgment reversed.